UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS R. ROSA,

                    Plaintiff,

        -v-

PARK AVENUE SOUTH MANAGEMENT LLC,

                    Defendant.

CIVIL ACTION NO. 25 Civ. 7245 (PAE) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE PAUL A. ENGELMAYER**, United States District Judge:

## I. INTRODUCTION

Plaintiff Carlos R. Rosa ("Rosa") sues his former employer, Defendant Park Avenue South Management LLC ("PASM"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL") §§ 650 et seq., and New York's Wage Theft Prevention Act, NYLL §§ 195 et seq. ("WTPA") seeking to recover unpaid overtime and minimum wages, liquidated damages, and related relief.  (Dkt. No. 1 (the "Complaint")).  Before the Court is PASM's motion to dismiss the Complaint for failure to timely serve PASM under Federal Rule of Civil Procedure 12(b)(5) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 16–18 (the "MTD")), which the Honorable Paul A. Engelmayer referred to the undersigned for this report and recommendation.  (Dkt. No. 19).

For the reasons set forth below, we respectfully recommend that the MTD be GRANTED.

**II. BACKGROUND**

A. **Factual Background**

We summarize the factual allegations in the Complaint (Dkt. No. 1), accepting them as true for purposes of the MTD.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002); Lee v. Karaoke City, No. 18 Civ. 3895 (PAE) (SDA), 2020 WL 5105176, at *3 (S.D.N.Y. Aug. 31, 2020).[1]

From approximately August 2007 through August 2022, PASM, a real estate and building management company, employed Rosa as a building superintendent at two of its Manhattan apartment buildings – 736 Riverside Drive and 609 West 151st Street (the "Buildings").  (Dkt. No. 1 ¶ 21).  Rosa's responsibilities included cleaning and building maintenance.  (Id. ¶ 24).  During his employment, Rosa worked from 8:00 a.m. to 5:00 p.m. Monday to Friday, and one extra hour each Tuesday, Thursday, Saturday, and Sunday, totaling 49 hours per week.  (Id. ¶¶ 25–26).  PASM paid Rosa approximately $1,200 every two weeks.  (Id. ¶ 29).

Rosa alleges that PASM failed to pay him overtime wages in violation of the FLSA (the "FLSA Claim").  (Dkt. No. 1 ¶¶ 39–44).  He further alleges that PASM failed to pay him minimum and overtime wages in violation of the NYLL (the "NYLL Minimum Wage Claim" and the "NYLL Overtime Claim," together the "NYLL Claims").  (Id. ¶¶ 45–54).  Rosa also alleges that PASM violated the WTPA by failing to provide him with wage notices, weekly wage statements, and paystubs (the "WTPA Claims").  (Id. ¶¶ 60–65).  Finally, Rosa alleges that PASM breached a contract to pay him wages and provide him with health insurance benefits (the "Contract Claims").  (Id. ¶ 28, 57).

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

B. **Procedural Background**

1. **Rosa I Action**

On January 7, 2024, Rosa filed a separate action in this District against PASM, Tristar

Management Associates LLC ("Tristar"),[2] and several individual Doe defendants alleging the same

wage-and-hour claims under the FLSA and NYLL as in this action.  (Compare No. 24 Civ. 119 (GHW)

(VF) (S.D.N.Y.) (the "Rosa I Action"), Dkt. No. 1, with Dkt. No. 1; see Dkt. No. 18-2).  On June 25,

2024, the Honorable Gregory H. Woods dismissed all claims against PASM in the Rosa I Action

due to Rosa's failure to timely serve PASM.  See Rosa v. Park Ave. S. Mgmt., LLC, No. 24 Civ. 119

(GHW), 2024 U.S. Dist. LEXIS 122132, at *2 (S.D.N.Y. June 25, 2024).  Shortly thereafter, Rosa and

Tristar executed a settlement agreement in the Rosa I Action (the "Rosa I Agreement"), pursuant

to which Rosa agreed:

> not to sue Tristar, and their respective, direct or indirect, officers, directors,
> owners, shareholders, parents, affiliates, divisions, subsidiaries, members, board
> members, managers, supervisors, agents, predecessors, professional employer
> organizations, insurers, and counsel and their agents and employees (collectively,
> "Releasees") for any and all past and present unpaid wage matters, claims,
> demands, and causes of action under the FLSA or NYLL . . .

(Dkt. No. 18-3 ¶ 2 (emphasis added)).  On July 11, 2024, the parties consented to Magistrate

Judge jurisdiction for all purposes (Rosa I Action, Dkt. No. 32), and on August 22, 2024, the

Honorable Valerie Figueredo approved the Rosa I Agreement pursuant to Cheeks v. Freeport

Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  (Rosa I Action, Dkt. No. 34).

---

[2] Tristar is another real estate management company that has owned the Buildings, where Rosa remains
employed, since approximately August 2022.  (See Dkt. No. 27 at 4; Dkt. No. 18-2 ¶ 7).  Rosa's amended
complaint in the Rosa I Action corrected Tristar's name.  (Rosa I, Dkt. No. 13 (the "Rosa I AC")).

**2.  This Action**

On August 30, 2025, Rosa filed the Complaint against PASM and two individual Defendants, Rosario Doe and Anibelca Doe. (Dkt. No. 1). On November 28, 2025 — the deadline to serve the summons and complaint on PASM pursuant to Federal Rule of Civil Procedure 4(m) — Rosa requested an extension of time to effect service, which the Court granted, extending the deadline to December 15, 2025. (Dkt. Nos. 4–5). After Rosa failed to file proof that he had effected service by that deadline, the Court issued an Order to Show Cause directing Rosa to show cause why he failed to serve Defendants by the deadline. (Dkt. No. 8 (the "OTSC")). Rosa responded to the OTSC by letter explaining that he served PASM on December 12, 2025, provided an affidavit of service, and consented to the dismissal of Rosario Doe and Anibelca Doe. (Dkt. No. 9). The Court dismissed all claims against Anibelca and Rosario Doe, leaving PASM as the only remaining Defendant. (Dkt. No. 10). On February 2, 2026, PASM filed the MTD. (Dkt. Nos. 16–18). On March 9, 2026, after three extensions of time, Rosa filed an opposition to the MTD. (Dkt Nos. 26–27; see Dkt. Nos. 20–25). On March 23, 2026, PASM filed a reply. (Dkt No. 28).

### III. LEGAL STANDARDS

#### A.  Federal Rule of Civil Procedure 12(b)(5)

In deciding a Rule 12(b)(5) motion for insufficient service of process, "a [c]ourt must look to Rule 4, which governs the content, issuance, and service of a summons." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Federal Rule of Civil Procedure 4(m), which governs the timeliness of service, states: "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

4

specified time." Fed. R. Civ. P. 4(m).  If, however, the plaintiff shows good cause for the failure to effect service, "the court must extend the time for service for an appropriate period." Id.  A court may grant an extension under Rule 4(m) even absent good cause.   Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007).  "In determining whether a discretionary extension is appropriate in the absence of good cause, a court considers the following four factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." DeLuca, 695 F. Supp. 2d at 66.

The plaintiff bears the burden of establishing effective service.  Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010); George v. Pro. Disposables Int'l, Inc., 221 F. Supp. 3d 428, 442 (S.D.N.Y.  2016).   In  considering  a Rule 12(b)(5) motion to dismiss for  insufficient  service  of process, "a court must look to matters outside the complaint, such as the steps taken by the plaintiff to effectuate service, to determine whether it has jurisdiction." Darowski v. Wojewoda, No. 15 Civ. 803 (MPS), 2016 WL 4179840, at *2 (D. Conn. Aug. 7, 2016). "Where a defendant moves to dismiss under both Fed. R. Civ. P. 12(b)(5), for insufficient service of process, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim, the trial court will ordinarily consider the jurisdictional issues first." George, 221 F. Supp. 3d at 442 (citation modified).

### B. Federal Rule of Civil Procedure 12(b)(6)

Where a defendant moves to dismiss a complaint for failure to state a claim on which relief could be granted under Rule 12(b)(6), the Court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Co. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To survive a motion to dismiss for failure to state a claim, "the plaintiff must provide the grounds upon which his [or her] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). In evaluating a motion to dismiss, the Court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." Sanderson v. Leg Apparel LLC, No. 19 Civ. 8423 (GHW), 2020 WL 7342742, at *3 (S.D.N.Y. Dec. 14, 2020) (citing Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)). The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Id. at *2 (quoting Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013)). "[A] complaint that offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement' will not survive a motion to dismiss." Id. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 87–88 (2d Cir. 2013)).

For purposes of Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers, 282 F.3d at 152. The Court may also consider "matters of which judicial notice may be taken, which includes documents either in a plaintiff's possession or of which plaintiff had

6

knowledge and relied on in bringing suit." Johnson v. City of New York, No. 21 Civ. 10535 (VSB), 2023 WL 5629232, at *2 (S.D.N.Y. Aug. 31, 2023) (citation modified).

## IV. DISCUSSION

### A. Failure to Serve

In the MTD, PASM invokes Rule 12(b)(5) to argue that the Court should reconsider its December 1, 2025 Order granting Rosa's request for an extension of time to serve PASM because Rosa failed to show good cause for an extension and "there was no reason" for the Court to grant a discretionary extension. (Dkt. No. 17 at 10–13; see Dkt. No. 5 (the "Extension Order")). Rosa responds that he timely served PASM under the Extension Order and the Court need not consider now whether there was good cause to grant the extension of time to serve. (Dkt. No. 27 at 8–9).

Here, Rosa timely served PASM by the deadline in the Extension Order. (See Dkt. No. 9). Therefore, Rule 12(b)(5), does not apply.

Motions for reconsideration of interlocutory orders are disfavored but may be justified "when there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct a clear error of law or to prevent a manifest injustice." In re Motors Liquidation Co., 552 B.R. 253, 274 (Bankr. S.D.N.Y. 2016). [3] Here, PASM has not provided any justification for reconsidering the Extension Order. There has been no intervening change in the law, no newly discovered evidence identified by either party, and vacating the Extension Order is not necessary to prevent a manifest injustice. Accordingly, we decline to reconsider the Extension Order and find no merit in PASM's argument that it was not timely served.

---

[3] "An 'interlocutory order,' as opposed to a final order, does not completely resolve all of the issues pertaining to a discrete claim." In re Motors, 552 B.R. at 273 (citing In re Fugazy Exp., Inc., 982 F.2d 769, 776 (2d Cir.1992)).

**B.   Failure to State a Claim**

PASM argues that Rosa fails to state a claim because:  (1) Rosa released his claims against PASM in the Rosa I Agreement; (2) the FLSA Claim is time-barred; and (3) the WTPA Claims are without merit.  (Dkt. No. 17 at 13–16).  PASM also argues that the Court should decline to exercise supplemental jurisdiction over the NYLL, WTPA, and Contract Claims.  (Id. at 16).  Rosa responds that he never released his claims against PASM in the Rosa I Agreement, and that he has plausibly stated the FLSA and WTPA Claims.  (Dkt. No. 27 at 9–12).  Although neither party addresses the NYLL Claims and the Contract Claims, we discuss the sufficiency of these claims for completeness.  (See Dkt. Nos. 17; 27; 28).

**A.   Release of PASM**

PASM argues that the Rosa I Agreement, in which Rosa released Tristar's "predecessors," including PASM, bars Rosa's claims in this action.  (Dkt. Nos. 17 at 13–14; 28 at 7–11).  Rosa responds that although PASM may have preceded Tristar in time as manager of the Buildings, PASM and Tristar have no corporate affiliation or relationship.  (Dkt. No. 27 at 9–11).

**1.   Materials Reviewed**

As an initial matter, we must determine whether, in analyzing the MTD, we may consider the Rosa I Agreement and the Rosa I AC, which PASM attached as exhibits.  (Dkt. Nos. 18-2; 18-3).  As for the Rosa I Agreement, at the motion to dismiss stage, courts in this Circuit have taken judicial notice of settlement agreements and releases to determine whether a prior litigation bars the new claims.  See Johnson, 2023 WL 5629232, at *3 (collecting cases); cf. Megginson v. City of New York, No. 24 Civ. 115 (NRM) (MMH), 2026 WL 522621, at *4 (E.D.N.Y. Feb. 25, 2026) (declining to take judicial notice of general release that was not filed on public docket in the

8

previous litigation).  Here, the <u>Rosa I</u> Agreement was filed on the public docket in the <u>Rosa I</u> Action (<u>Rosa I</u> Action, Dkt. No. 33-1), and it will assist us in analyzing how to resolve the MTD, <u>see</u> <u>Johnson</u>, 2023 WL 5629232, at *3, so we properly take judicial notice of it.  (Dkt. No. 18-3).

As for the <u>Rosa I</u> AC, we may take judicial notice of a complaint in a prior related action "without regard to the truth of [its] contents, and only to establish the fact of such litigation and related filings."  <u>Barletta v. Quiros</u>, No. 22 Civ. 1110 (SALM), 2023 WL 2687285, at *4 (D. Conn. Mar. 29, 2023) (quoting <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008) and <u>Glob. Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 157 (2d Cir. 2006)); <u>see</u> <u>Exchange Listing, LLC v. Inspira Tech., Ltd.</u>, 661 F. Supp. 3d 134, 143 (S.D.N.Y. 2023) (citing <u>Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.</u>, 146 F.3d 66, 70 (2d Cir. 1998)). Therefore, we may consider the <u>Rosa I</u> AC for its existence but not for the truth of its contents.

### 2.  <u>PASM as "Predecessor"</u>

Here, we must interpret the term "predecessor" in the <u>Rosa I</u> Agreement to determine whether Rosa released its claims against PASM.  In the <u>Rosa I</u> Agreement, Rosa released Tristar and its "officers, directors, owners, shareholders, parents, affiliates, divisions, subsidiaries, members, board members, managers, supervisors, agents, [and] <u>predecessors</u> . . ." (Dkt. No. 18-3 ¶ 2) (emphasis added).  PASM cites <u>Arrowgrass Master Fund Ltd. v. Bank of N.Y. Mellon</u>, 106 A.D.3d 582 (1st Dep't 2013) to support a broad definition of "predecessor" to mean "[o]ne who precedes another in an office or position."  (Dkt. No. 28 at 9–10).[4]  Without citation to any

---

[4] In <u>Arrowgrass</u>, the language of the release at issue released the "2015 Note Trustees and each of its predecessors."  106 A.D.3d at 583. The New York court explained that in the context of a broad release, the term "predecessor" was not limited to a corporate predecessor.  (<u>Id.</u>)

authority, Rosa argues that "predecessor" is limited to a corporate predecessor, which PASM is not. (Dkt. No. 27 at 10).

"It is well established that 'settlement agreements are contracts and must therefore be construed according to general principles of contract law.'" Genao v. Ruiz, No. 24 Civ. 2077 (LJL), 2025 WL 219160, at *4 (S.D.N.Y. Jan. 16, 2025) (quoting Mateo v. Carinha, 799 F. App'x 51, 53 (2d Cir. 2020) (summary order)). The Rosa I Agreement is governed by New York law (Dkt. No. 18-3 ¶ 11), so we consider New York law and cases applying it in interpreting the release. See Mateo, 799 F. App'x at 53. "Under New York law, the threshold question in a dispute over the meaning of a contract—including a release—is whether its terms are ambiguous." Vincenzo v. Wallkill Cent. Sch. Dist., No. 21 Civ. 308 (GTS) (TWD), 2022 WL 913094, at *10 (N.D.N.Y. Mar. 29, 2022). "[W]hen general language is used in the releasing document, the release is to be construed most strongly against the releasor." Woods v. City of Utica, No. 23 Civ. 758 (MAD) (TWD), 2025 WL 1532707, at *4 (N.D.N.Y. May 29, 2025).

We agree with Rosa that the term "predecessor" contained within the release in the Rosa I Agreement is limited to a corporate predecessor. See In re Lehman Bros., Inc., 541 B.R. 45, 101 (Bankr. S.D.N.Y. 2015) (declining to extend the interpretation of "predecessor" in Arrowgrass and limiting the term "predecessor" in general release to corporate predecessors only), aff'd in part, rev'd in part on other grounds, No. 15 Civ. 8989 (LGS), 2016 WL 4197594 (S.D.N.Y. Aug. 8, 2016). On the current record, however, the allegations in the Complaint, which we must accept as true, do not provide a sufficient basis to determine the corporate relationship between Tristar and PASM as a matter of law. Neither the Rosa I Agreement nor the Rosa I AC — the two documents of which we have taken judicial notice — can assist us in determining the

corporate relationship or affiliation between PASM and Tristar.  Therefore, we are unable to determine as a matter of law that the release in the Rosa I Agreement bars Rosa's claims against PASM here.

Accordingly, we respectfully recommend that the MTD be denied with respect to PASM's argument based on the release in the Rosa I Agreement.

### B.  Timeliness of the FLSA Claim

PASM argues that the FLSA Claim is time-barred under either a two-year or three-year statute of limitations because Rosa's employment at PASM ended in August 2022 and he did not file the Complaint until August 30, 2025.  (Dkt. No. 17 at 15).  Rosa acknowledges that his employment ended in August 2022 but argues that the FLSA Claim is timely.  (Dkt. No. 27 at 11).

To state a claim for wages under the FLSA, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked hours for which he did not receive proper wages.  Tackie v. Keff Enters. LLC, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  "The FLSA provides for a two-year statute of limitations, unless the employer's conduct is willful, in which case, a three-year statute of limitations applies."  Lorenzo v. 12 Chairs BYN, LLC, No. 22 Civ. 947 (PKC) (TAM), 2024 WL 1174426, at *3 (E.D.N.Y. Mar. 19, 2024); 29 U.S.C. § 255(a).  "For the longer three-year statute of limitations to apply, a plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA."  Romero v. Manhattan & Bronx Surface Transit Operating Auth., No. 21 Civ. 4951 (LJL), 2022 WL 624451, at *4 (S.D.N.Y. Mar. 2, 2022).  A FLSA violation is willful if "the employer knew or showed reckless disregard for the

matter of whether its conduct was prohibited[.]"  <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988).

Here, Rosa alleges that PASM willfully failed to pay him overtime in violation of the FLSA. (Dkt. No. 1 ¶¶ 42–43).  This single allegation is conclusory, however, and lacks any facts supporting a plausible inference PASM "acted in any manner suggesting an awareness that [its] actions violated or could violate the FLSA."  <u>Romero v. Manhattan</u>, 2022 WL 624451, at *5. Accordingly, the two-year statute of limitations applies.  <u>Id.</u> (applying two-year statute of limitations where plaintiff made only "a conclusory allegation that a defendant acted willfully, without factual support to back [it] up").

Rosa alleges PASM employed him from "approximately August 2007 through August 2022" (Dkt. No. 1 ¶ 24), but did not file the Complaint until August 30, 2025, longer than two years, and in fact, almost three years, after the termination of his employment with PASM. Accordingly, his FLSA Claim is untimely.

Accordingly, we respectfully recommend that the MTD be granted with respect to the FLSA Claim.

**C.  <u>New York Law Claims</u>**

**1.  <u>Supplemental Jurisdiction</u>**

"It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  <u>Klein & Co. Futures, Inc. v. Bd. of Trade of the City of N.Y.</u>, 464 F.3d 255, 262 (2d Cir. 2006); <u>see</u> <u>Paleja v. KP NY Operations LLC</u>, 21-286-cv, 2022 WL 364007, at *3 (2d Cir. Feb. 8, 2022) (summary order) (declining to exercise supplemental jurisdiction over NYLL claim where FLSA

claim was dismissed).   Because we have recommended that the FLSA Claim be dismissed, we respectfully recommend that the Court decline to exercise supplemental jurisdiction over the NYLL Claims, the WTPA Claims, and the Contract Claims.

Should the Court decide otherwise, for completeness, we analyze PASM's other arguments for dismissal.

### 2.   The NYLL Claims

Rosa asserts both the NYLL Minimum Wage Claim and the NYLL Overtime Claim.   (Dkt. No. 1 ¶¶ 45–54).[5]   To state a wage-and-hour claim under the NYLL, a plaintiff must allege that he was the defendant's employee and that he worked hours for which he did not receive proper wages.   See Tackie, 2014 WL 4626229, at *2, 2 n.2.   In other words, we apply the same analysis as the FLSA Claim, less the nexus to interstate commerce and a minimum amount of annual sales. Id. at 2 n.2.

### a.   Employer-Employee Relationship

Under the NYLL, the definition of "employer" is broad, see NYLL § 190(3),[6] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'"   Mondragon v. Keff, No. 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019).   Rosa alleges that PASM was his employer, and that at all relevant times,

---

[5] There is no dispute that Rosa's NYLL Claims are timely.   Under the NYLL, the statute of limitations is six years.   See NYLL § 198(3).   Because Rosa filed the Complaint on August 30, 2025 and his employment with PASM concluded in August 2022 (Dkt. No. 1 ¶¶ 5, 21, 24), Rosa's NYLL Claims, which seek unpaid overtime and minimum wages for hours Rosa worked between August 2019 and August 2022, are timely.

[6] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

he was an employee of PASM. (Dkt. No. 1 ¶¶ 6–7). Rosa pleads that he worked as a superintendent for the Buildings, which PASM owned, and for which his responsibilities included "cleaning, maintenance, plastering and compounding, minor electrical and plumbing and heating repairs, collecting and removing garbage, trash and recycling, as well as sweeping or shoveling the snow[.]" (Id. ¶ 24). He further alleges that PASM controlled every aspect of his employment, including "hiring, retaining, firing, scheduling, controlling, managing, supervising, and record-keeping." (Id. ¶ 5). Thus, Rosa has plausibly alleged that PASM was his employer under the NYLL. See Agureyev v. H.K. Second Ave. Rest., Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *5 (S.D.N.Y. Mar. 5, 2021) (finding plaintiffs' factual allegations sufficient to support the conclusion that defendants were his employer); Modragon, 2019 WL 2551536, at *8 (same).

### b. The NYLL Minimum Wage Claim

Here, Rosa alleges that PASM paid him $1,200 every two weeks, which equates to an hourly rate of $15.00.[7] (Dkt. No. 1 ¶ 29). The NYLL requires employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week. NYLL § 652(1). Under the NYLL, "an employee must plead facts demonstrating that [his] 'average hourly wage falls below the . . . minimum wage.'" Navarro v. Building Serv., Inc., No. 23 Civ. 7343 (ARR) (MMH), 2024 WL 4225747, at *2 (E.D.N.Y. Sept, 18, 2024) (quoting Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 115 (2d Cir. 2013)).

---

[7] $600 gross per week / 40 hours = $15 hourly pay rate. See Ramos v. Sabor Tropical Rest. Corp., No. 25 Civ. 5075 (JLR) (SDA), 2026 WL 906228, at *4 (S.D.N.Y. Mar. 17, 2026) ("[U]nder the NYLL, the Court divides the pay the plaintiff in question actually received by the lesser of 40 hours or the actual number of hours he worked during the work week.").

14

New York's statutory minimum wage was $13.50 in 2019 and $15.00 in 2020 through 2022. See Ramos, 2026 WL 906228, at *3; NYLL § 652 (1). Rosa's average hourly rate of $15.00 therefore exceeded New York's statutory minimum wage in 2019 and was equal to it between 2020 and 2022. Rosa therefore has not stated a plausible claim for unpaid minimum wages under the NYLL.

Accordingly, we respectfully recommend that the MTD as to the NYLL Minimum Wage Claim be granted.

### c. The NYLL Overtime Claim

Rosa alleges that he worked "approximately 49 hours per week during his employment" and that PASM failed to pay him for "hours worked beyond 40 hours in a workweek." (Dkt. No. 1 ¶¶ 26, 33).

The NYLL requires an employer to pay an overtime rate of one and a half times the employee's "regular rate" of pay. N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours." Lundy, 711 F.3d at 114. A plaintiff must also allege that he was not properly compensated for that overtime. Tackie, 2014 WL 4626229, at *3.

Here, Rosa alleges that each week he worked nine hours above 40 hours in a workweek. (Dkt. No. 1 ¶¶ 26, 33). Thus, Rosa has stated a plausible claim for overtime under the NYLL.

Accordingly, we respectfully recommend that the MTD as to the NYLL Overtime Claim be denied.

15

### 3. __The WTPA Claims__

In support of his WTPA Claims, Rosa asserts that PASM failed to provide a wage notice at the time of his hire in violation of NYLL § 195(1), failed to notify him of changes to his rate of pay in violation of NYLL § 195(2), and failed to provide him with wage statements in violation of NYLL § 195(3).  (Dkt. No. 1 ¶¶ 62, 63, 65).  PASM argues that the WTPA Claims should be dismissed because:  (1) the WTPA is not retroactive; (2) the WTPA Claims are time-barred; and (3) there is no private right to action under NYLL § 195(2).  (Dkt. No. 17 at 15–16).  Without any citation to authority, Rosa responds only that his WTPA Claim under NYLL § 195(2) for failure to notify him of changes to his pay between August 2016 and August 2022, which was after the WTPA became effective, is timely.  (Dkt. No. 27 at 12).  We analyze the sufficiency of each WTPA Claim.

### a. __NYLL § 195(1)__

Under NYLL § 195(1), "employers are required to provide employees with a notice containing the rate and frequency of their pay at the time of hiring[.]"  Juarez v. Manhattan Laundry Ctrs. Inc., No. 18 Civ. 2843 (VSB), 2023 WL 3614264, at *4 (S.D.N.Y. May 24, 2023).  Employees who began working before the WTPA took effect on April 9, 2011 cannot bring a claim for an employer's failure to provide notice at the time of hiring as required by NYLL § 195(1)(a) because the WTPA is not retroactive.  See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 510 (S.D.N.Y. 2017); Franco v. Jubilee First Ave. Corp., No. 14 Civ. 7729 (SN), 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016).

Rosa began working for PASM in 2007 (Dkt. No. 1 ¶ 5), before the WTPA took effect.  Therefore, Rosa cannot state a plausible claim under NYLL § 195(1).  See Gold v. N.Y. Life Ins. Co., 730 F. 3d 137, 144 (2d Cir. 2013).

Accordingly, we respectfully recommend that the MTD as to Rosa's WTPA Claim under NYLL § 195(1) be granted.

### b. NYLL § 195(2)

Rosa argues that he has stated a plausible WTPA Claim under NYLL § 195(2) because PASM was required, but failed, to notify him of changes to his rate of pay, which happened "numerous times" during his employment.  (Dkt. No. 27 at 12).  While NYLL § 195(2) does require employers to notify employees of changes in their rates of pay, this provision does not give rise to a private right of action.  See Chan v. Big Geyser, Inc., No. 17 Civ. 6473 (ALC), 2018 WL 4168967, at *9 (S.D.N.Y. Aug. 30, 2018).  Furthermore, courts have declined to infer a private right of action under § 195(2).  Id.  Rosa therefore cannot state a plausible claim under NYLL § 195(2).

Accordingly, we respectfully recommend that MTD as to the WTPA Claim under NYLL § 195(2) be granted.

### c. NYLL § 195(3)

Rosa alleges that PASM failed to provide him with weekly wage statements in violation of NYLL § 195(3).  (Dkt. No. 1 ¶ 63).  NYLL § 195(3) requires employers to "furnish each employee with a statement with every payment of wages, listing" the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked.  NYLL § 195(3); see Gamero, 272 F. Supp. 3d at 511.

To the extent that PASM argues for dismissal of Rosa's NYLL § 195(3) claim as untimely, (see Dkt. No. 17 at 15), as stated in n.5, supra, the WTPA Claims are timely.  See NYLL § 198(3).

17

Separately, however, to maintain his WTPA claim under NYLL § 195(3), Rosa must demonstrate that he has standing under Article III of the United States Constitution.  Guthrie v. Rainbow Fencing Inc., 113 F. 4th 300, 304 (2d Cir. 2024).  To do so, he must adequately allege:

> (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is  'fairly traceable to the challenged action of the defendant;' and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court.

Franklin v. Whole Foods Mkt. Grp., Inc., No. 20 Civ. 4935 (VEC), 2022 WL 256460, at *8 (S.D.N.Y. Jan. 26, 2022) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice[.]"  Lujan, 504 U.S. at 561.  Those factual allegations "must be sufficient to put injury-in-fact into the realm of the plausible[.]"  Franklin, 2022 WL 256460, at *8 (citing Harry v. Total Gas & Power N. Am., 889 F.3d 104, 110 (2d Cir. 2018)).

For an "informational injury," such as the failure to receive required information, to support standing, see TransUnion LLC v. Ramirez, 594 U.S. 413, 441 (2021), a plaintiff must allege "'downstream consequences' from failing to receive that information that show an interest in using the information 'beyond bringing the lawsuit.'"  Shi v. TL & CG Inc., No. 19 Civ. 8502 (SN), 2022 WL 2669156, at *8 (S.D.N.Y. July 11, 2022) (quoting Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022)).  Specifically, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."  Guthrie, 113 F. 4th at 308.  A plaintiff must provide allegations to "support a plausible theory as to how he was injured by [the] defendants' failure to provide the required documents."  Id. at 309.

18

Here, Rosa alleges that PASM's failure to provide him with weekly wage statements during his employment caused him "to suffer financial harm from his not being informed of the applicable rate(s) of compensation due from and actually being paid to him from [PASM]." (Dkt. No. 1 ¶ 63). This allegation is just barely sufficient to satisfy the standard set forth in Guthrie. See Romero v. Garner Env't Servs., Inc., No. 25 Civ. 6912 (LJL), 2025 WL 3638397, at *7 (S.D.N.Y. Dec. 15, 2025) (finding sufficient for standing purposes plaintiff's allegations that defendants' failure to provide wage notices and accurate wage statements prevented him from "(i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him"); Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (finding sufficient for standing purposes plaintiff's allegations that she was unable to correct discrepancies with her pay that she did not learn about until years later); Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC, No. 22 Civ. 6415 (FPG), 2024 WL 4652251, at *2 (W.D.N.Y. Nov. 1, 2024) (finding sufficient for standing purposes plaintiff's allegation that defendant's failure to provide accurate wage statements "prevented him from accurately determin[ing] what amounts he was being underpaid"). Rosa has thus plausibly stated a WTPA Claim under NYLL § 195(3).

Accordingly, we respectfully recommend that the MTD as to the WTPA Claim under NYLL § 195(3) be denied.

## D. The Contract Claims

Rosa's Contract Claims are premised both on PASM's alleged failure to pay him wages and failure to provide Rosa health insurance benefits. (Dkt. No. 1 ¶ 57). "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the

plaintiff, (3) breach by the defendant, and (4) damages." Clybourn v. Spiderbands LLC, No. 18 Civ. 3688 (ER), 2018 WL 6528234, at *4 (S.D.N.Y. Dec. 12, 2018) (quoting Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011)). "Breach of contract claims are compatible with . . . NYLL claims if the damages sought are for different wrongs." Newman v. ASA College, Inc., 754 F. Supp. 3d 521, 543 (S.D.N.Y. 2024).

First, Rosa cannot state a claim for breach of contract with respect to unpaid wages because such a claim would be premised on the same facts, and therefore, duplicative of, his NYLL Claims. See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 362 (E.D.N.Y. Feb. 27, 2015) (dismissing breach of contract claim as duplicative of NYLL overtime claim where claims were grounded on same facts).

Second, Rosa cannot state a plausible Contract Claim with respect PASM's failure to provide health insurance benefits "promised to him[.]" (Dkt. No. 1 ¶ 57). Rosa does not allege the first element of a breach of contract claim — the existence of an agreement to provide Rosa with health insurance benefits — only that PASM "controlled" his employment. (Dkt. No. 1 ¶ 5). Nowhere in the Complaint does Rosa allege the existence of an agreement that PASM would pay him health insurance benefits.

Accordingly, we respectfully recommend that the MTD with respect to the Contract Claims be granted.

## V. <u>CONCLUSION</u>

For the reasons set forth above, we respectfully recommend that the MTD be GRANTED as follows:

(1) the FLSA Claim be dismissed with prejudice;

(2) the Court decline to exercise supplemental jurisdiction over the NYLL Claims, the

WTPA Claims, and the Contract Claims and dismiss them without prejudice.

Should the Court decide to exercise supplemental jurisdiction, we respectfully recommend that:

(1) the MTD be GRANTED and the following claims be DISMISSED WITH PREJUDICE:

    a.  the NYLL Minimum Wage Claim;

    b.  the WTPA Claim under NYLL § 195(1);

    c.  the WTPA Claim under NYLL § 195(2);

(2) the MTD BE GRANTED and the Contract Claims be DISMISSED WITHOUT PREJUDICE;

(3) the MTD be DENIED as to:

    a.  the NYLL Overtime Claim, and

    b.  the WTPA Claim under NYLL § 195(3).


Dated:      New York, New York
             April 30, 2026

_____
SARAH L. CAVE
United States Magistrate Judge

21

\*                    \*                    \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any request for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

22